## Case No. 10,180.

### The NEW ORLEANS.

[9 Ben. 303.] [1]

District Court, S. D. New York. Jan., 1878.

COLLISION AT SEA — STEAMER AND PILOT-BOAT— LIGHTED TORCH.

1. A steamer, before colliding with a pilot-boat schooner, stopped and reversed and ported, it being proper for her to stop and reverse, and her officers exercising what seemed to them to be the best judgment, in porting. The schooner

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

being in fault in not having a proper green light visible at a proper distance, *held*, that no consequences of such manoeuvres could operate to impute them to the steamer as faults.
[Distinguished in The Alaska, 22 Fed. 553.]

2. The provision of section 4234 of the Revised Statutes, which requires that "every sail vessel shall, on the approach of any steam vessel during the night time, show a lighted torch upon that point or quarter to which such steam vessel shall be approaching," is one which the schooner, though a pilot-boat, was bound to observe when off pilot-ground; and there does not seem to be any reason why that section should not apply to her while on pilot ground.

3. As the schooner was carrying colored lights, which rule 11 of section 4233 says a sailing pilot vessel on pilot-ground shall not carry, she must be held to have been regarded by those on board of her as not being at the time a pilot-boat, within the meaning of rule 11, because she was not sailing on pilot-ground. Where she was she was simply a "sail vessel," and, therefore, subject to the provisions of section 4234.

4. A steamer must exhibit proper lights to a sailing vessel, in order to charge the latter with fault for not having shown a lighted torch.

5. Because of the failure of the schooner to show such lighted torch, the steamer failed to sooner discover the schooner, and it was held that such fault of the schooner freed the steamer from fault in not sooner discovering the schooner.

In admiralty.

Scudder & Carter. for libellants.
Man & Parsons, for claimants.

BLATCHFORD, District Judge. This libel is filed by the owners of the schooner pilot-boat Caprice, and by such of her company as were on board of her at the time, to recover for the damages sustained by them by the sinking of the schooner, in consequence of a collision which took place between her and the steamship New Orleans, in the Bay of New York, a short distance above the Narrows, on the morning of the 27th of February, 1876, before daylight. The schooner had been on a cruise outside of Sandy Hook, and had put all her pilots on board of vessels, and was bound up the bay to the city of New York. The wind was light from the north-east, and the schooner was beating, and was on her port tack, heading about east by south, and making about three knots an hour. The steamer was bound up the bay and was heading about north. The steamer, stem on, hit the starboard side of the schooner, just abaft the main rigging, and cut into the schooner, so that she sank as soon as the steamer had backed clear from her. The schooner was much nearer to the Long Island shore than she was to the Staten Island shore. The libel alleges that the steamer was moving at full speed; that the collision was caused by the negligence and improper conduct of those on board of the steamer, in not having a good and sufficient lookout, in running at too great a rate of speed, in getting so near to and not keeping out of the way of the schooner, in not stopping and backing in time to avoid the collision, and in being so far out of the usual channel for steamers; that the schooner kept

her course without change; and that the collision was not caused by the fault or negligence of those on board of the schooner.

The answer alleges that lights properly set and burning could, on the morning of the collision, be easily distinguished, and there was nothing in the atmosphere to obscure them; that the steamer was on her regular course from the Narrows up to the city of New York; that her regulation lights were properly set and burning brightly; that she had a competent lookout properly stationed and attentive; that her master was on deck, and he and others of her officers and crew were on deck and properly attending to their duties; that, when about a mile above Fort Hamilton, the sails of the schooner were made on the port bow of the steamer; that, at the time, the steamer was at half speed; that, immediately, her bell was rung to stop and reverse; that the order was at once obeyed, but, before the headway of the steamer could be entirely stopped, she struck the schooner; that, when the vessels were so near to each other as to make it impossible for the steamer to prevent a collision, and after the schooner's sails had been seen, a green light on the schooner came in sight, but it was burning so dimly that it could not be previously seen; that, although the steamer's lights could and should have been readily seen from the schooner for two or three miles, nothing was done on the schooner to call attention to her or her position; that the steamer was not moving at full speed; that she had a good and sufficient lookout; that she stopped and backed as soon as the schooner could be seen; that she was in the usual channel for steamers; and that the collision was caused by the negligence and improper conduct of those on board of the schooner, in not having proper lights set, and in not adopting any measures to call attention to the schooner when the steamer could and should have been observed from her.

The evidence establishes that the steamer was running at a moderate speed, and that the lookout kept by her was adequate and vigilant. Her master and mate were on the bridge, looking ahead through their night-glasses, and there was a lookout stationed on her forecastle near the bow. All three of these men concur in saying that they saw the sails of the schooner before they could see or did see her green light. The master saw the sails through his glass before he saw them without it. The green light of the schooner, whether it was in its box, or whether it was on the deck, was so burning as not to be visible at the proper distance. If it had been in a condition to be visible at the proper distance, it would have been seen on board of the steamer before the sails were seen. As it was, the steamer stopped and reversed (being before under a slow bell) as soon as the schooner was made out. At the same time, the steamer ported. It is claimed that the back motion of the vessel, with a port wheel,

tended to throw her head to port. But, on the whole evidence, I do not think it established that the actual effect of the combined reversing and porting was to induce or contribute to the collision, or that reversing and starboarding would have avoided a collision. It was proper for the steamer to stop and reverse, and she exercised what seemed to her officers to be the best judgment, in also porting; and no consequences of those manoeuvres can operate to impute them to her as faults, in view of the fault of the schooner in not having a proper green light visible at a proper distance.

Section 4234 of the Revised Statutes requires that "every sail vessel shall, on the approach of any steam vessel during the night time, show a lighted torch upon that point or quarter to which such steam vessel shall be approaching." This provision was one which the schooner, though a pilot-boat, was bound to observe in the place where she was, off pilot-ground. A sailing pilot-vessel, on pilot-ground, is bound, by rule 11, of section 4233, not to carry colored lights, but to carry a white mast-head light, and to exhibit a flare-up light every fifteen minutes. There does not seem to be any reason why section 4234 should not apply to her while on pilot-ground as well as while off pilot-ground. However this may be, the schooner was regarded by those on board of her as not being at the time a pilot-boat, within the meaning of rule 11, because she was not sailing on pilot-ground, for she was carrying colored lights, which rule 11 says shall not be carried by sailing pilot-vessels. Where she was, she was simply a "sail vessel," and, therefore, subject to the provisions of section 4234.

The sail vessel must have proper notice of the approach of the steam vessel in order to make the requirement as to showing a lighted torch operative. Therefore, the steamer was bound to exhibit to the schooner proper lights, if the schooner is to be charged with fault for not having shown a lighted torch. The weight of the evidence is, that the steamer's mast head and side lights were in proper order and burning properly, and that any failure on the part of the crew of the schooner to see them was due to the want of proper vigilance and attention on their part. The idea was advanced, that the white mast-head light of the steamer was seen, but no colored light on the steamer was seen, and that the white light was, therefore, taken to be the receding white stern-light of a steam tug. But, it is apparent, that the white mast-head light of the approaching steamer could not be taken for a receding light. The irresistible conclusion is, that the crew of the schooner either did not, through lack of vigilance, see the steamer's lights till she was close on them, or else that they did see her lights and neglected to show a lighted torch. They had a torch on board ready at hand to be quickly lighted and shown. The steamer was entitled to this signal from the schooner, and,

for want of it, she failed to discover the schooner sooner than she did. The fault of the schooner in this respect frees the steamer from fault in not sooner discovering the schooner.

The libel must be dismissed, with costs.